# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A Silver Hewlett Packard Laptop and a Black Zalman T6 ATX Mid Tower, as described in Attachment A | )<br>)<br>)    Case No. 3:25-mc-745<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
a Silver Hewlett Packard Laptop and a Black Zalman T6 ATX Mid Tower, as described in Attachment A hereto,

located in the _____ District of ___Oregon___ , there is now concealed *(identify the person or describe the property to be seized)*:
The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1028 | Unlawful production, use, or possession of identification documents |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Anthony Alcobia, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__Telephone at __9:53 am__ a.m./p.m.__ *(specify reliable electronic means)*.

Date: June 27, 2025

_____
*Judge's signature*

City and state: Portland, Oregon

YOULEE YIM YOU, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:        AFFIDAVIT OF ANTHONY ALCOBIA

**Affidavit in Support of an Application Under Rule 41
for a Warrant to Search and Seize Evidence Including Digital Evidence**

I, Anthony Alcobia, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent employed by Homeland Security Investigations (HSI) and have been so employed since January 2019. I am currently assigned to work out of the Deschutes County Digital Forensics Lab (DFL) and, specifically, tasked to investigate violation of laws linked to Internet Crimes Against Children (ICAC) for HSI Bend.   The DFL includes members of the Deschutes County Sheriff's Department, Bend Police Department, Redmond Police Department, Oregon Department of Justice, Federal Bureau of Investigation, Oregon State Police, U.S. Marshals, U.S. Attorney's Office and the Deschutes District Attorney's Office. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. During my tenure with HSI, I have participated in the investigation of cases involving drug smuggling, bulk cash smuggling, weapons trafficking, human smuggling, commercial fraud, fugitive operations, worksite enforcement, homicide, and crimes against children. I have served numerous arrest warrants and participated in the service of search warrants. I have participated in numerous investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where contraband has been found; (c) reviewed and analyzed numerous taped conversations discussing criminal activity; (d) debriefed cooperating witnesses and other confidential sources; (e) monitored wiretapped conversations and reviewed line sheets prepared by wiretap monitors; and (f) searched electronic evidence. As a result of my

training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2.    I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search and examination of a Silver Hewlett Packard Laptop (Clackamas County Sheriff's Office Case Item 25-008987-15) (hereinafter "**DEVICE 1**") and a Black Zalman T6 ATX Mid Tower (Clackamas County Sheriff's Office Case Item 25-008987-16) (hereinafter "**DEVICE 2**"), which are currently stored, in law enforcement possession, at Deschutes County Digital Forensics Laboratory, as described in Attachment A hereto, and the extraction of electronically stored information from the **DEVICE 1** and **DEVICE 2**, as described in Attachment B hereto.   As set forth below, I have probable cause to believe and do believe that the items set forth in Attachment B constitute evidence contraband, fruits, and instrumentalities of violations of *18 U.S.C. § 1028* - Fraud and related activity in connection with identification documents, authentication features, and information, and other subsections of this specific violation.

3.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

**Affidavit of Anthony Alcobia**                                                                                                          **Page  2**

**Applicable Law**

4.       Title 18, United States Code § 1028 contains the following provisions:

*Title 18, United States Code § 1028(a)(1)* makes it a crime for any person to knowingly and without lawful authority produce an identification document, authentication feature, or a false identification document.

*Title 18, United States Code § 1028(a)(3)* makes it a crime for any person to knowingly possess with intent to use unlawfully or transfer unlawfully five or more identification documents (other than those issued lawfully for the use of the possessor), authentication features, or false identification documents.

*Title 18, United States Code § 1028(a)(6)* makes it a crime for any person to knowingly possesses an identification document or authentication feature that is or appears to be an identification document or authentication feature of the United States which is stolen or produced without lawful authority knowing that such document or feature was stolen or produced without such authority.

**Statement of Probable Cause**

5.       On May 28, 2025, I became aware of the arrest of Jacob JOHNSON (DOB: 01-15-1991). JOHNSON was encountered and arrested in Clackamas County, Oregon. JOHNSON was arrested on an outstanding state warrant for 12 counts of Encouraging Child Sexual Abuse in the First Degree and another 12 counts of Encouraging Child Sexual Abuse in the Second Degree, stemming from a 2018 HSI Cyber Crime and Child Sexual Abuse Material (CSAM) investigation. During the course of that 2018 investigation, JOHNSON's residence was searched, and several devices were seized and searched. At the time, JOHNSON was required to register as

a sex offender following a 2014 conviction for Attempted Sexual Abuse in the First Degree. During the ongoing investigation, JOHNSON stopped going to work and moved out of his residence without updating his sex offender registration as required. JOHNSON was unable to be located until his May 2025 arrest for a felony warrant and Failure to Register as a Sex Offender.

6. According to Clackamas County Police Reports, JOHNSON has been living under the assumed identity of "Shae Jamison" for at least the duration of his relationship with his girlfriend, who ultimately reported him to the police after discovering JOHNSON's true identity and learning that he was an out-of-compliance sex offender. JOHNSON was located and arrested at his residence located at 9250 SE 242nd Ave, Damascus, OR 97089.

7. JOHNSON's girlfriend told police that she and JOHNSON dated, on and off, for the past year. She lived with JOHNSON approximately 4-5 days a week at the residence located at 9250 SE 242nd Ave, Damascus, OR 97089. She knew JOHNSON by a different identity ("Shae Jamison") for the year prior. By happenstance, she discovered JOHNSON had numerous fake identities and learned his real identity. She also learned JOHNSON was wanted for child sex crimes. On her own accord, she collected multiple items that she believed might be relevant to crimes JOHNSON possibly committed and shared them with law enforcement. These items included **DEVICE 1** and **DEVICE 2**. She never saw CSAM on JOHNSON's computers, but she had concerns regarding how "secretive" JOHNSON was about what was stored on them. She provided Clackamas County Sheriff's Office (CCSO) consent to enter her and JOHNSON's shared residence.

8. During his arrest, law enforcement seized 14 forged documents that JOHNSON had apparently used to conceal his true identity. The arrest report authored by CCSO stated that

**Affidavit of Anthony Alcobia**                                                                                                   **Page 4**

investigators found 4 fake identities and 14 forged documents that JOHNSON used and/or possessed. During the arrest, police seized the following documents from JOHNSON:

- Identity 1 Documents - Shae R Jamison IL Driver's License (x3) and Social Security Card 1

- Identity 2 Documents - Joshua T Mitchell IL Driver's License (x2) and Social Security Card 2

- Identity 3 Documents - Ryan S Jamison IL Driver's License (x2) and Social Security Card 3

- Identity 4 Documents - Brandon Kelly Lindner - Social Security Card 4 (x4)

9. On June 6, 2025, I conducted searches of U.S. Customs and Border Protection Import systems, which revealed the shipping of "MICROPHONES AND STANDS ETC, PARTS, OTHER" from China to Consignee "Shae Jamison" and to address "9250 SE 242ND AVE, DAMASCUS, US 97089" on or about October 28, 2024.

10. Based on my training and experience, I know that computers are an integral part of today's world. Often, computer users utilize computers every day for countless activities such as work, social media, bills, making online purchases, and to connect to the internet. Furthermore, based on my training and experience, individuals who seek to avoid law enforcement detection while facing criminal charges take extensive measures in order to conceal their true identities. These extreme measures include, by are not limited to, the producing, procuring, and purchasing of new identification documents and lying to friends and acquaintances in order to hide their identities from any and all people closely associated with

**Affidavit of Anthony Alcobia**                                                                                                    **Page 5**

them. Evidence of these measures can be discovered in electronic devices (**DEVICE 1** and **DEVICE 2**) closely associated with the individual.

11. Based on my training and experience, individuals who obtain and use fake identities use their computers in multiple different ways in order to do so. First, because the purchase and sale of fraudulent identity documents is illegal, such documents are not readily or easily obtainable through in-person means. Individuals seeking fake identity documents therefore frequently use computers to research how to obtain such documents, and frequently purchase or obtain such documents through online sellers who communicate and receive payment over the internet. As part of this process, the individual must generally provide a photograph of himself for use in the identity documents, which must be saved and transmitted via computer. Similarly, online providers of fake identity documents may provide mockups of the documents for the customer to review and approve before purchasing. Second, once a fake identity and the accompanying documents are obtained, an individual's internet activity can show evidence of his use of that identity for everyday activities such as making purchases, receiving mail or deliveries, setting up online accounts, and communicating with people who know him under the fake identity. Third, people frequently keep copies of their identity documents saved in their photos or other files, or in Cloud storage accounts accessed through their computers, in order to access them easily, obtain replacements if they are lost, and provide proof of identity in setting up online accounts. Accordingly, evidence of the Target Offenses is likely to be found in multiple locations on **DEVICE 1** and **DEVICE 2**, including photo storage and organization applications, file managers, email accounts, social media accounts, Cloud storage accounts, and browser history.

**Affidavit of Anthony Alcobia**                                                                                                        **Page 6**

12. **DEVICE 1** and **DEVICE 2** are currently in the lawful possession of the Deschutes County Digital Forensics Lab. They came into HSI and the DFL's possession in the following way: an HSI Task Force Officer received them from Clackamas County Sheriff's Office.

13. The **DEVICES** are currently in storage at 63333 US-20, Bend, OR 97703. In my training and experience, I know that the **DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **DEVICES** first came into the possession of the CCSO and DFL.

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. *Digital camera*. A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. This storage media can contain any digital data, including data unrelated to photographs or videos.

    b. *Storage medium*. A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

    c. *Internet*. The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet,

**Affidavit of Anthony Alcobia**                                                                                               **Page  7**

connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

15. Based on my training, experience, and research, I know that the **DEVICE 1** and **DEVICE 2** have capabilities that allow them to serve as storage media and to connect to the Internet, including through email and social media applications and through a web browser. When used in conjunction with a webcam or integrated camera, they can also serve as a digital camera. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. There is probable cause to believe that things that were once stored on the **DEVICES** will still be stored there because, based on my knowledge, training, and experience, I know:

    a. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. When a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data. Therefore, deleted files or remnants of deleted files, may reside in free space or slack space—that is, in

**Affidavit of Anthony Alcobia**                                                                                                         **Page 8**


space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

        b.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

        c.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

18.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the **DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on the **DEVICES** because, based on my knowledge, training, and experience, I know:

        a.      Data on the **DEVICES** can provide evidence of a file that was once on the **DEVICES** but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were

recently active. Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the device at a relevant time. Further, forensic evidence on a device can show how and when the device was accessed or used. Such "timeline" information allows the forensic analyst and investigators to understand the chronological context of access, use, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the device user. Last, forensic evidence on a device may provide relevant insight into the device user's state of mind as it relates to the offense under investigation. For example, information on a device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the device or password protecting or encrypting such evidence in an effort to conceal it from law

**Affidavit of Anthony Alcobia**                                 **Page 10**

enforcement), or knowledge that certain information is stored on a computer (e.g., logs indicating that the incriminating information was accessed with a particular program).

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

  19. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

**Affidavit of Anthony Alcobia**                            **Page 11**

many parts of the **DEVICES** to human inspection in order to determine whether they contain evidence described by the warrant.

20. The initial examination of the **DEVICES** will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

21. If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the **DEVICES** or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

22. If an examination is conducted, and it is determined that the **DEVICES** do not contain any data falling within the ambit of the warrant, the government will return the **DEVICES** to their owner within a reasonable period of time following the search and will seal any image of the **DEVICES**, absent further authorization from the Court.

23. If the **DEVICES** contain evidence, fruits, contraband, or are an instrumentality of a crime, the government may retain the **DEVICES** as evidence, fruits, contraband, or an

instrumentality of a crime or to commence forfeiture proceedings against the **DEVICES** and/or the data contained therein.

24.     The government will retain a forensic image of the **DEVICES** for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

25.     *Manner of execution*.   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### Conclusion

26.     Based on the foregoing, I have probable cause to believe, and I do believe, that **DEVICE 1** and **DEVICE 2** described in Attachment A contain evidence, contraband, fruits, and instrumentalities of violations of *18 U.S.C. § 1028* - Fraud and related activity in connection with identification documents, authentication features, and information, and other specified subsections of this specific violation, as set forth in Attachment B.   I therefore request that the Court issue a warrant authorizing a search of the **DEVICE 1** and **DEVICE 2** as described in Attachment A for the items listed in Attachment B and the seizure and examination of any such items found.

**Affidavit of Anthony Alcobia**                                                                                          **Page 13**

27. Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Mira Chernick. I was informed that it is AUSA Mira Chernick's opinion that the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

*By phone pursuant to Fed. R. Crim. P. 4.1*
Anthony Alcobia
Special Agent HSI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __9:53 am__ a.m./p.m. on June __27__, 2025.

*Youlee Yim You*
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**ATTACHMENT A**

**Property to Be Searched**

The property to be searched is a Silver Hewlett Packard Laptop and a Black Zalman T6 ATX Mid Tower, which are currently located on the premises of the Deschutes County Digital Forensics Laboratory at 63333 W. Hwy 20, Bend, OR 97703.

**ATTACHMENT B**

**Items to Be Seized**

1.	All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 1028(a)(1) (Unlawful Production of an Identification Document, Authentication Feature, or False Identification Document); 18 U.S.C. § 1028(a)(3)  (Possession With Intent to Use or Transfer Five or More documents or Authentication Features); 18 U.S.C. § 1028(a)(6) (Unlawful Possession of Means of Identification); and involve Jacob Johnson, including:

	a.	Information, correspondence, records, digital data, documents, or other data pertaining to the manufacture, possession, and/or use of fraudulent identification documents;

	b.	Records relating to communication with others as to the criminal offenses listed above; including incoming and outgoing voice messages; text messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from applications that can assign roaming phone numbers; and other Internet-based communication media;

	c.	Records relating to documentation or memorialization of the criminal offenses listed above, including voice memos, photographs, videos, and other audio and video media, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos, including device information, geotagging information, and information about the creation date of the audio and video media;

	d.	Records relating to the planning and execution of the criminal offenses above, including Internet activity, Internet Protocol addresses used, firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that

the user entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

  e. Application data relating to the criminal offenses above; and

  f. All records and information related to the geolocation of the Devices.

  g. Bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Search Procedure**

4. The examination of the Devices may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether they contain evidence described by the warrant.

5. The initial examination of the Devices will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the

**Attachment B**                                  **Page 2**

warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

6. If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Devices or images do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

7. If an examination is conducted, and it is determined that a Device does not contain any data falling within the ambit of the warrant, the government will return the Device to its owner within a reasonable period of time following the search and will seal any image of the Device, absent further authorization from the Court.

8. If a Device contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Device as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Device and/or the data contained therein.

9. The government will retain a forensic image of the Device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory

evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.